## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WUBILL WUDNUER,<br><br>            Plaintiff,<br><br>    vs.<br><br>DOUGLAS COUNTY JAIL,<br>DOUGLAS COUNTY, DOUGLAS<br>COUNTY DEPARTMENT OF<br>CORRECTIONS, CO'S AND<br>SEARGANTS INVOLVED, MICHAEL<br>MYERS, Director; and HAWSHANK,<br>CO;<br><br>            Defendants. | **8:24CV269**<br><br><br>**MEMORANDUM AND ORDER** |

Plaintiff Wubill Wudnuer[1] filed a Complaint on July 3, 2024, while he was confined in the Jasper County Jail in Newton, Iowa. Filing No. 1. Plaintiff was then moved to the Douglas County Jail ("DCJ") in Omaha, Nebraska, Filing No. 8, and he filed an Amended Complaint on August 30, 2024, Filing No. 11. The Court will consider the Amended Complaint as the operative pleading. Plaintiff was given leave to proceed in forma pauperis on September 4, 2024. Filing No. 14. The Court now conducts an initial review of Plaintiff's Amended Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

---

[1] Plaintiff identified himself as "Kan Mar" in his Complaint and listed "Wubill Wudnuer" as another name by which he was known. Filing No. 1 at 2. When mail sent to Plaintiff was returned to the Court as undeliverable, *see* Filing No. 10, the Court updated the docket sheet to list Plaintiff's name as "Wubill Wudnuer" to match the name provided by Plaintiff on the envelope used to submit his notice of address change, Filing No. 8, and to match the name listed in the Douglas County Department of Corrections' inmate records.

## I. SUMMARY OF AMENDED COMPLAINT

Plaintiff, who is currently confined in the Nebraska Department of Correctional Services' Reception and Treatment Center, *see* Filing No. 19, brings this action pursuant to 42 U.S.C. § 1983 against the Douglas County Department of Corrections ("DCDC"), DCDC Director Michael Myers ("Myers"), Corrections Officer Hawshank ("Hawshank"), and Douglas County alleging claims of false imprisonment, invasion of privacy, and unreasonable searches and seizures in violation of the Fourth Amendment while he was confined in the DCJ. Filing No. 11.

Plaintiff alleges that on March 29, 2024, unspecified DCDC staff "were doing strip searches as a way to humble inmates" and Plaintiff refused because he was "fed up." Filing No. 11 at 5. After more correctional officers were called in, Plaintiff complied, but "[t]hey then dragged it out to make it more demeaning by having female C.O.s there as well and saying it wasn't adequate and having [Plaintiff] redo [the search]." *Id*. DCDC staff brought Plaintiff to "Administrative Segregation" where they made Plaintiff submit to another search and placed Plaintiff "in a dry cell that flushes once a day and they have to give [Plaintiff] water out of a jug because the sink doesn't work." *Id*. at 6. Plaintiff "took a UA as part of the program the next day" and "on the [second] day they said they found a rock like substance in [Plaintiff's] room," though Plaintiff maintains he could not have brought that into the cell "and there are cameras and witnesses that will say the same thing." *Id*.

Plaintiff does not allege he received any injuries as a result of these events. *Id*. at 5. As relief, he seeks $2,000 for each of the 62 days he spent in administrative segregation "for contraband," which totals $124,000 in compensatory damages, and he also requests $5 million in punitive damages and an injunction. *Id*.

2

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute

3

and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

## III. DISCUSSION

As pleaded, Plaintiff's Complaint fails to state a claim for relief against any of the named defendants, but the Court will give Plaintiff leave to amend his Complaint as set forth below.

## A. DCJ and DCDC Not Proper Defendants

Plaintiff named DCJ and DCDC as defendants in his original Complaint, Filing No. 1 at 2, and DCDC was also named in the Amended Complaint, Filing No. 11 at 1. However, Plaintiff fails to state a claim against DCJ and DCDC because a county jail is not a distinct legal entity subject to suit. *See Dan v. Douglas Cnty. Dep't of Corr.*, No. 8:06CV714, 2009 WL 483837, at *4 (D. Neb. Feb. 25, 2009) ("the Department of Corrections and other units within the DCCC and Douglas County lack the legal capacity to sue or be sued in their own names"); *see also Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) ("[C]ounty jails are not legal entities amenable to suit."). Accordingly, DCJ and DCDC will be dismissed as defendants to this action.

## B. Official Capacity Claims and Claims against Douglas County

Plaintiff sues Douglas County and defendants Myers and Hawshank in both their official and individual capacities. Plaintiff's claims against Myers and Hawshank in their official capacities are actually claims against their employing municipality, Douglas County. *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."); *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800 (8th Cir. 1998) ("Liability for city

officials in their official capacities is another form of action against the city . . . .").

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality (or other local government unit) can be liable under 42 U.S.C. § 1983 if an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. "To establish municipal liability, a plaintiff must first show that one of the municipality's officers violated [his] federal right." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007)). "If that element is satisfied, then a plaintiff must establish the requisite degree of fault on the part of the municipality and a causal link between municipal policy and the alleged violation." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388-92 (1989)).

To prevail on a claim alleged against Douglas County, Plaintiff must show that the constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016). "Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

> Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials

after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation."

*Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) (quoting *Corwin*, 829 F.3d at 699-700). A municipal liability claim based on a theory of inadequate training or supervision is simply an extension of a claim based on a "policy" or "custom" theory of municipal liability. *Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018).

Here, Plaintiff's Complaint fails to allege that any actions were taken pursuant to a policy or custom of Douglas County, nor does the Complaint allege facts suggesting a failure to train on the part of Douglas County. Plaintiff's allegation that "they were doing strip searches as a way to humble inmates" is too vague and conclusory to permit a reasonable inference that the conduct complained of resulted from an unconstitutional policy or custom of Douglas County or a deliberate choice by a decision-maker with final authority. *Cotton v. Douglas Cnty. Dep't of Corr.*, No. 8:16CV153, 2016 WL 5816993, at *6 (D. Neb. Oct. 5, 2016) ("Although [Plaintiff] need not set forth with specificity the existence of an unconstitutional policy or custom at the pleading stage, he must nonetheless present some allegations, references, events, or facts from . . . which the court could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom of the County or a deliberate choice by a decision-maker with final authority."). Accordingly, Plaintiff's Complaint fails to state a claim against Douglas County and Myers and Hawshank in their official capacities and such claims are subject to dismissal.

6

The Court, however, will give Plaintiff leave to amend his complaint to state a plausible claim for relief against Douglas County and Myers and Hawshank in their official capacities as set forth below.

## C. Individual Capacity Claims

Liberally construed, Plaintiff asserts claims of unreasonable search and seizure in violation of Plaintiff's Fourth Amendment rights against Myers and Hawshank. Filing No. 11 at 3–6. "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *Kingsley v. Lawrence Cty.*, 964 F.3d 690, 700 (8th Cir. 2020) (quoting *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017)). A plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution. *Iqbal*, 556 U.S. 662, 676 (2009).

Plaintiff does not allege any facts regarding defendant Myers' involvement in the alleged constitutional violation, but rather appears to seek to impose liability on Myers based on his position as the "Director of DCDC." Filing No. 11 at 2. "It is well settled that § 1983 does not impose respondeat superior liability." *Hughes v. Stottlemyre*, 454 F.3d 791, 798 (8th Cir. 2006) (internal quotation marks omitted). To state a § 1983 claim, the plaintiff must allege that the defendant was personally involved in or had direct responsibility for incidents that resulted in injury. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (because there is no vicarious liability in § 1983 actions, a prisoner "must plead that each Government official defendant, through the official's own individual actions, has violated the Constitution"); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985). "Supervisors can, however, 'incur liability . . . for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of violative practices.'" *Langford v. Norris*, 614 F.3d 445, 460 (8th

7

Cir. 2010) (quoting *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993)). Here, Plaintiff has alleged no facts with respect to Myers' involvement in any of the alleged constitutional violations, nor has Plaintiff alleged that Myers failed to take corrective action or tacitly authorized any violative practices. Accordingly, Plaintiff has failed to state a claim for relief against Myers.

Similarly, while Plaintiff names Hawshank as a defendant in this matter, he makes no allegations against Hawshank in the body of his Amended Complaint. For example, Plaintiff does not allege that Hawshank was personally involved in either of the searches of Plaintiff, rather he merely alleges that unspecified DCDC staff were responsible for the searches. Liability in a 42 U.S.C. § 1983 case is personal and "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019) (per curiam). Because Plaintiff does not allege any facts connecting Hawshank to the alleged misconduct, he has failed to state a claim upon which relief can be granted against Hawshank. *See Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (holding court properly dismissed claims against defendants where pro se complaint was silent as to the defendants except for their names appearing in the caption).

As explained further below, the Court will grant Plaintiff leave to file an amended complaint to allege plausible claims for relief against Myers and Hawshank in their individual capacities, as well as their official capacities. If Plaintiff chooses to amend his individual-capacity claims against defendants, he must explain how each defendant personally participated in the alleged constitutional violation. Further, if Plaintiff chooses to bring such individual-

capacity claims against defendants, he should be mindful of the elements of such claims and the relief available to him, which are discussed below.

**D. Pretrial Detainee Fourth Amendment Claim**

Pretrial detainees retain the Fourth Amendment right to be free from unreasonable searches and seizures. *Arnzen v. Palmer*, 713 F.3d 369, 372 (8th Cir. 2013). However, a pretrial detainee's expectation of privacy "is of a 'diminished scope,'" *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)), and the Eighth Circuit has held "that detainees do not have a reasonable expectation of privacy in their jail cells," *Id.* (citing *United States v. Hogan*, 539 F.3d 916, 923 (8th Cir. 2008)). To determine a search's "reasonableness" in an institutional setting, a court must balance "the need for the particular search against the invasion of personal rights that the search entails." *Bell*, 441 U.S. at 559. In applying the balancing test, a court must consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* Searches can be conducted on less than probable cause when the significant and legitimate security interests of the correctional institution are balanced against the privacy interests of the detainee. *Id.* at 560. Further, a court must defer to the judgment of institutional officials "unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of institutional security." *Arnzen*, 713 F.3d at 373 (internal quotation marks and citation omitted).

If Plaintiff chooses to file an amended complaint to sue defendants in their individual and/or official capacities, Plaintiff should clarify the details of the searches and seizures that allegedly violated his Fourth Amendment rights, the individuals who personally performed such searches and seizures,

and factual allegations regarding the scope, manner, and location of the searches and seizures.

## E. Available Relief

In his Amended Complaint, Plaintiff requests compensatory and punitive damages as well as unspecified injunctive relief. Filing No. 11 at 5. Plaintiff, however, does not allege that he suffered any injury as a result of the alleged constitutional violations. The Prison Litigation Reform Act ("PLRA") provides: "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C. § 1997e(e). The PLRA therefore limits the available damages in the absence of a physical injury but does not preclude Plaintiff from recovering nominal and punitive damages.[2] *See Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004).

In addition, Plaintiff's transfer from the DCJ to the Reception and Treatment Center moots his claims for injunctive relief. *See Randolph v. Rodgers*, 253 F.3d 342, 345 (8th Cir. 2001) (when actions required by injunction would be impossible for correctional-center defendants to execute because plaintiff was moved to another institution, plaintiff's claims for injunctive relief against defendants were moot); *Martin*, 780 F.2d at 1337 (concluding that claim for injunctive relief against warden was moot because prisoner was

---

[2] As this Court has noted, "punitive damages are potentially available in § 1983 actions, although on a limited basis, [and] they have the potential to survive initial review." *Robinson v. Carson*, No. 8:23CV137, 2023 WL 6880153, at *3 n.9 (D. Neb. Oct. 18, 2023) (citing *Naucke v. City of Park Hills*, 284 F.3d 923, 929 (8th Cir. 2002) ("Unlike compensatory damages, which are mandatory and are awarded as a matter of right once liability is established, punitive damages are awarded or rejected in a particular case at the discretion of the fact finder once sufficiently serious misconduct by the defendant is shown.")).

transferred to another prison). Thus, Plaintiff cannot seek injunctive relief against defendants in his amended complaint.

## IV. OTHER PENDING MOTIONS

### A. Motion for Appointment of Counsel

Plaintiff filed what the Court construes as a motion requesting the appointment of counsel. Filing No. 13. "There is no constitutional or statutory right to appointed counsel in civil cases." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). A district court "may request an attorney to represent" an indigent civil litigant, 28 U.S.C. § 1915(e)(1), but it has a "good deal of discretion" in deciding whether to do so, *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011). "Relevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and to present the claims, and the presence or absence of conflicting testimony." *Recca v. Omaha Police Dep't*, 859 F. App'x 3, 4 (8th Cir. 2021) (citing *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996)).

The Court has carefully reviewed the record and finds there is no need for the appointment of counsel at this time. As such, Plaintiff's motion for appointment of counsel shall be denied without prejudice to reassertion. The Court will, however, "continue to be alert to the possibility that, because of procedural complexities or other reasons, later developments in the case may show either that counsel should be appointed, or that strict procedural requirements should, in fairness, be relaxed to some degree." *Williams v. Carter*, 10 F.3d 563, 567 (8th Cir. 1993).

### B. Motions to Amend

After he filed his Amended Complaint, Plaintiff filed correspondence on September 25, 2024, in which he requested to amend his requested relief and add claims for relief and which the Court construes as a motion to amend.

Filing No. 15. On September 27, 2024, Plaintiff filed a second motion requesting leave to file an amended complaint to add "a 14th Amendment claim[3] and raising damages to $150 million." Filing No. 16.

Upon consideration of Plaintiff's requests, and in light of the Court's determination that Plaintiff's Amended Complaint fails to state a plausible claim for relief against any named defendant, the Court will grant Plaintiff's motions for leave to file a second amended complaint. Plaintiff shall have 30 days from the date of this Memorandum and Order to file a second amended complaint that sufficiently states his constitutional claims against Douglas County, Myers, Hawshank, and any additional specific, named defendants. The amended complaint must specify in what capacity the defendants are sued, must identify each defendant by name to the extent possible, and must set forth all of Plaintiff's claims (and any supporting factual allegations) against that defendant. To be clear, Plaintiff's second amended complaint must restate the relevant allegations of his Amended Complaint, Filing No. 11, and any new allegations. Plaintiff should be mindful to explain what each defendant did to him, when the defendant did it, and how the defendants' actions harmed him. Plaintiff is warned that any amended complaint he files will supersede, not supplement, his prior pleadings. Plaintiff is encouraged to use the court-

---

[3] It appears Plaintiff seeks to assert a Fourteenth Amendment claim based on his confinement in administrative segregation. Filing No. 15 at 1–2. The Due Process Clause of the Fourteenth Amendment requires that a pretrial detainee not be punished. *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell*, 441 U.S. at 535 n.16). To determine whether a pretrial detainee's conditions of confinement constitute "punishment," a plaintiff may show that such conditions are "intentionally punitive" or, in the absence of an "expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id.* at 907 (citing *Bell*, 441 U.S. at 536–39). If the conditions are found to be arbitrary or excessive, it may be "'infer[red] that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.'" *Id.* (citing *Bell*, 441 U.S. at 539).

approved form to draft his amended complaint, which the Clerk of the Court will provide to him.

**C. Motions for Discovery**

Plaintiff has also filed what the Court construes as two motions for discovery. First, in his correspondence dated September 25, 2024, Plaintiff requested to subpoena DCDC "for all the incident reports from March 29th to May 1st[, 2024,] concerning [Plaintiff]," the camera footage and body cam footage for that same time period, "all search documentation from every visual search (strip search) done since December 19, 2023," and camera footage from August 10 to September 9, 2024, as Plaintiff was placed in administrative segregation again. Filing No. 15 at 5. Second, on October 28, 2024, Plaintiff filed a motion asking "that all the [correctional officers] and sergeants that are unnamed be revealed and added to the complaint/case." Filing No. 18 (spelling corrected).

To the extent Plaintiff seeks discovery in this matter, his motions are denied without prejudice. The Court has conducted an initial review of Plaintiff's Amended Complaint and determined that it is subject to dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. No discovery may take place in this case unless the Court determines that this matter may proceed to service of process. As Plaintiff must amend his pleading to state plausible claims for relief before this matter may proceed to service, his requests for discovery must be denied as premature.

The Court notes, however, that it appears Plaintiff seeks to sue certain DCDC staff whose names are unknown to him. Although a complaint must include the names of all the parties, *see* Fed. R. Civ. P. 10(a), "an action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained

after reasonable discovery." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Thus, Plaintiff may proceed against defendants who are unknown to him, but he must allege sufficient specific facts about each unknown defendant from which his or her identity may be determined.

## V. CONCLUSION

Plaintiff's Complaint fails to state a plausible claim for relief and is, therefore, subject to dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). As he requests, the Court will give Plaintiff 30 days to file a second amended complaint in accordance with this Memorandum and Order. However, the Court will dismiss DCJ and DCDC as parties to this action for the reasons stated above and will update the caption to reflect only the remaining parties named in the Amended Complaint, i.e. Douglas County, Myers, and Hawshank.

If Plaintiff fails to file a second amended complaint within the time allowed, this action will be dismissed without prejudice and without further notice. The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A after he files a second amended complaint.

IT IS THEREFORE ORDERED that:

1.      Plaintiff's motions to amend, Filing No. 15; Filing No. 16, are granted consistent with this Memorandum and Order.

2.      Plaintiff shall have 30 days to file a second amended complaint in accordance with this Memorandum and Order. Failure to file a second amended complaint within the time specified by the Court will result in the Court dismissing this case without further notice to Plaintiff. In his second amended complaint, Plaintiff must identify each defendant by name (to the extent possible) and set forth all of Plaintiff's claims (and any supporting

factual allegations) against that defendant. Plaintiff should be mindful to explain in his second amended complaint what each defendant did to him, when the defendant did it, and how the defendants' actions harmed him.

3.      In the event that Plaintiff files an amended complaint, Plaintiff shall restate the allegations of the Amended Complaint, Filing No. 11, and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

4.      The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A in the event he files a second amended complaint.

5.      The Clerk of the Court is directed to send to Plaintiff the Form Pro Se 14 Complaint for Violation of Civil Rights (Prisoner).

6.      The Clerk of the Court is directed to set a pro se case management deadline using the following text: **July 7, 2025**: deadline for Plaintiff's amended complaint.

7.      The Clerk of the Court is directed to remove "Douglas County Jail," "Douglas County Department of Corrections," and "CO's and Seargants Involved" as defendants to this action.

8.      Plaintiff's motions for appointment of counsel, Filing No. 13, and for discovery, Filing No. 15; Filing No. 18, are denied without prejudice to reassertion.

Dated this 4th day of June, 2025.

BY THE COURT:

John M. Gerrard
Senior United States District Judge

15